OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

June 5, 2001

The Honorable John Smithee
Chair, Insurance Committee
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0386

Re: Collection of payments assessed by a public
improvement district (RQ-0336-JC)

Dear Representative Smithee:

You inquire about the procedures for collecting delinquent special assessments under the Public Improvement District Assessment Act ("the Act"), chapter 372, subchapter A of the Local Government Code, in particular, whether a homestead may be subjected to forced sale for nonpayment of such assessments. Special assessments under Local Government Code chapter 372 may be collected by the governing body from property owners according to the procedures applicable to collecting an ad valorem tax on real property, with the exception of procedures applicable to the forced sale of homestead property to collect ad valorem taxes. Assessments are not "taxes" as that term is used in the Texas Constitution, and a homestead may not be subjected to forced sale for nonpayment of a public improvement district assessment under the "taxes due thereon" clause of article XVI, section 50 of the Texas Constitution. Likewise, a homestead may not be subjected to forced sale for nonpayment of a public improvement district assessment under the "improvement thereon" clause of article XVI, section 50, unless the owner of the homestead property signs a written contract with the supplier of materials and labor for an improvement on his homestead property.

A municipality may exercise the authority granted by chapter 372, subchapter A if it initiates or receives a petition requesting the establishment of a public improvement district. *See* TEX. LOC. GOV'T CODE ANN. § 372.002 (Vernon 1999); *see also id.* § 372.005 (petition requirements). The municipality may then "undertake an improvement project that confers a special benefit on a definable part of the municipality or the municipality's extraterritorial jurisdiction," such as landscaping, building fountains, establishing parks, or acquiring, constructing or improving libraries, pedestrian malls, sidewalks, streets, roadways, or off-street parking facilities. *Id.* § 372.003. The municipality establishes a public improvement district ("district"), providing for payment of at least ten percent of the cost of an improvement by special assessments against property in the district. *See id.* §§ 372.010, .014(a); *see also id.* § 372.014(b) (payment of assessments against exempt public property in the district). The cost of an improvement to be assessed against property in a district must be apportioned on the basis of special benefits accruing to the property because of the improvement. *See id.* § 372.015. The city may also issue short term or long term debt to fund

improvements in the district and may require the assessments to be the source of debt payment. *See id.* §§ 372.023-.026.

If a land owner in the district does not pay the assessment, the following procedures apply to collecting it:

> (b) An assessment or reassessment, with interest, the expense of collection, and reasonable attorney's fees, if incurred, is a first and prior lien against the property assessed, superior to all other liens and claims except liens or claims for state, county, school district, or municipality ad valorem taxes, and is a personal liability of and charge against the owners of the property regardless of whether the owners are named. The lien is effective from the date of the ordinance levying the assessment until the assessment is paid and may be enforced by the governing body in the same manner that an ad valorem tax lien against real property may be enforced by the governing body. . . .

*Id.* § 372.018(b); *see also id.* § 372.018(a) (interest on unpaid assessment). The property owner is personally liable for the "assessment or reassessment, with interest, the expense of collection, and reasonable attorney's fees, if incurred," and there is a lien against the property assessed for these amounts, enforceable "by the governing body in the same manner that an ad valorem tax lien against real property may be enforced by the governing body." *Id.* § 372.018(b).

You first ask whether the phrase "in the same manner that an ad valorem tax lien against real property" means that an official seeking to collect a delinquent assessment acts properly by using the same form notices, time lines, procedures, and the like, that are used for the collection of delinquent taxes.[1] The quoted phrase refers to enforcing the lien against the assessed property, not against the property owner's personal liability. Thus, we answer your question only in terms of collecting delinquent assessments through enforcing the lien.

"Manner" has been defined as "[t]he way in which something is done or takes place; method of action; mode of procedure." IX OXFORD ENGLISH DICTIONARY 324 (2d ed. 1989). Thus, a governing body may enforce the lien for an assessment "with interest, the expense of collection, and reasonable attorney's fees, if incurred" by using the procedures applicable to enforcement of an ad valorem tax lien against real property. TEX. LOC. GOV'T CODE ANN. § 372.018(b) (Vernon 1999). Because your question is very general, we cannot provide a comprehensive list of the procedures applicable to enforcing the assessment lien. We note that provisions for enforcing an ad valorem tax lien are found in chapter 33 of the Tax Code. *See, e.g.,*TEX. TAX CODE ANN. §§ 33.41 (suit to

---

[1]*See* Letter from Honorable John Smithee, Chair, Insurance Committee, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General, at 2 (Jan. 10, 2001) [hereinafter Request Letter].

foreclose lien); .47 (tax records as evidence) (Vernon Supp. 2001). Any specific provision for enforcing ad valorem tax liens must be examined to determine whether it is consistent with the provisions of chapter 372 of the Local Government Code.

Moreover, as your remaining questions indicate, constitutional considerations apply to enforcing an assessment lien on homestead property. As our answers to your questions on the constitutional homestead exemption will show, procedures for enforcing an ad valorem tax lien against a homestead do not apply to an assessment lien against a homestead.

Section 372.018(b) of the Local Government Code provides that an assessment under chapter 372, with interest, collection expenses, and attorney's fees, "*is a first and prior lien against the property assessed,* superior to all other liens and claims except liens or claims for state, county, school district, or municipality ad valorem taxes." TEX. LOC. GOV'T CODE ANN. § 372.018(b) (Vernon 1999) (emphasis added). Statutes are presumed to be constitutional, and they will be construed to be consistent with the constitution if possible. *See* TEX. GOV'T CODE ANN. § 311.021 (Vernon 1998); *see Brady v Fourteenth Court of Appeals,* 795 S.W.2d 712, 715 (Tex. 1990). We must construe section 372.018(b) consistently with the constitutional provision on homesteads.

Article XVI, section 50 of the Texas Constitution protects a homestead from forced sale for the payment of debts, with certain exceptions. The provision states in part:

> (a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:
>
> . . . .
>
> (2) the taxes due thereon;
>
> . . . .
>
> (5) work and material used in constructing new improvements thereon, if contracted for in writing, or work and material used to repair or renovate existing improvements thereon . . . .
>
> . . . .

TEX. CONST. art. XVI, § 50. *See also id.* § 51 (defining homestead).

You ask whether a homestead may be subjected to forced sale for nonpayment of a public improvement district assessment under the "taxes due thereon" clause of article XVI, section 50 of the Texas Constitution. *See* Request Letter, *supra* note 1, at 2. Although assessments are imposed under the taxing power and are taxes for some purposes, they are not "taxes" as that term is usually

employed in the Texas Constitution. *See Taylor v. Boyd*, 63 Tex. 533, 542 (1885) (assessments are not subject to the "equal and uniform" requirement in Texas Constitution article VIII, section 1); *see also Evans v. Whicker*, 90 S.W.2d 554, 556 (Tex. 1936) (where no homestead question was involved, liens for paving assessments were enforceable against property that was "'free from all liens and encumbrances, save and except taxes'" (citation omitted)). The words "tax," "taxes," and "taxation" in the Texas Constitution, used without a qualifying word, mean ad valorem tax, taxes, or taxation. *See Taylor*, 63 Tex. at 541. Ad valorem taxes are annually collected for the ordinary purposes of municipal government and are based on an estimation of the value of the entire taxable property in a city, from which an estimate is made of the percent of taxation of this value that will raise the sum necessary to meet the "current annual want." *Id.* at 540. In contrast, assessments are charges imposed for purposes that do not require that they be imposed annually, or with reference to time. *See id.* They are not usually based upon a percentage of the value of the taxable property of a city, but upon the real or supposed benefit resulting from the improvement of the property on which the specific charge is laid. *See id.* at 540-41.

The Texas Supreme Court has determined that a special assessment is not a "tax" within article XVI, section 50 of the Texas Constitution. *See City of Wichita Falls v. Williams*, 26 S.W.2d 910, 915 (Tex. 1930); *Higgins v. Bordages*, 31 S.W. 52, 55 (Tex. 1895); *see also Evans*, 90 S.W.2d at 556. A homestead is not subject to forced sale to collect the assessments against it. *See City of Wichita Falls*, 26 S.W.2d at 915, *see also Evans*, 90 S.W.2d at 556. A homestead may not be subjected to forced sale for nonpayment of a public improvement district assessment under the "taxes due thereon" clause of article XVI, section 50 of the Texas Constitution. *See* TEX. CONST. art. XVI, § 50 (a)(2).

You also ask whether a homestead may be subjected to forced sale for nonpayment of a public improvement district assessment under the "improvement thereon" claims of article XVI, section 50. *See* Request Letter, *supra* note 1, at 2; TEX. CONST. art. XVI, § 50(a)(5). You inquire whether a city's public adoption of the annual district assessment and service plan, combined with a landowner's written acknowledgment of the district when closing on the purchase of land, create a contract in writing for "improvements thereon." *See* Request Letter, *supra* note 1, at 2.

No provision of Local Government Code chapter 372 requires a landowner to make written acknowledgment of the district when closing on the purchase of land, but we will assume that this acknowledgment is made. Procedures for the city's adoption of an assessment and service plan are set out in chapter 372 of the Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 372.013(a) (Vernon 1999) (preparation of service plan for review and approval by the municipal governing body); *see also id.* § 372.014(a) (assessment plan). The governing body of the municipality prepares an assessment roll and must conduct a public hearing on it before it may levy assessments on the property. *See id.* §§ 372.015-.017.

Article XVI, section 50 of the Texas Constitution does not prevent the enforcement of a contractors' or mechanics' lien against a homestead. The provision authorizing mechanics' liens on homestead property was amended in 1997 by approval of the ballot proposition that also authorized

home equity loans.[2] *See generally Rooms With A View, Inc. v. Private Nat'l Mortgage Ass'n, Inc.*, 7 S.W.3d 840 (Tex. App.–Austin 1999, pet. denied), *cert. denied by, Nat'l Ass'n of Remodeling Indus. Inc. v. Rooms With A View, Inc.* 121 S. Ct. 72 (2000) (upholding constitutionality of amendment to provisions of article XVI, section 50 on contractor's and mechanics' liens). Debts for "work and material used in constructing new improvements thereon, if contracted for in writing" are excepted from the prohibition against the forced sale of a homestead. *See* TEX. CONST. art. XVI, § 50(a)(5). This language applies to new improvements on the homestead, while more stringent requirements set out in subsections (a)(5)(A) through (D) of the constitutional provision apply to the creation of a mechanics' lien for debts for "work and material used to repair or renovate existing improvements thereon." TEX. CONST. art. XVI, § 50(a)(5); *see Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580-81 (Tex. 2000).

A mechanics' lien may be created on a homestead only for debts for "work and material used in constructing new improvements *thereon.*" TEX. CONST. art. XVI, § 50(a)(5) (emphasis added). Many of the public improvement projects expressly authorized by Local Government Code chapter 372 are unlikely to be improvements on the homestead property. This statute expressly identifies a number of public improvement projects, such as establishing and improving parks, constructing fountains, distinctive lighting and signs, acquiring and installing of pieces of art, acquiring, constructing or improving libraries, pedestrian malls, sidewalks, streets, roadways and off-street parking facilities, and acquiring, constructing, improving, or rerouting mass transportation facilities. *See* TEX. LOC. GOV'T CODE ANN. § 372.003 (Vernon 1999). A homestead cannot possibly be liable under the "improvements thereon" language of article XVI, section 50, for an assessment used to improve property other than the homestead.

There are public improvements, in particular, paving sidewalks and streets, that are made upon homestead property. *See Tex. Bitulithic Co. v. Warwick*, 293 S.W. 160, 162-64 (Tex. Comm'n App. 1927, judgm't adopted). The common-law rule assumes that a conveyance of land on a public roadway conveys the fee to the center of the road, absent express language showing a contrary intention. *See id.* In addressing your question, we will assume that some of the projects authorized by Local Government Code chapter 372 include "work and material used in constructing new improvements" on homestead property. *See* TEX. CONST. art. XVI, § 50(a)(5).

A construction or improvement lien on a homestead will be valid only if it is created in the manner provided in article XVI, section 50 of the Texas Constitution. *See Moray Corp. v. Griggs*, 713 S.W.2d 753, 754 (Tex. App.–Houston [1st Dist.] 1986, writ ref'd). The construction or improvement lien attaches to a homestead for a debt for "work and material used in constructing new improvements thereon, *if contracted for in writing.*" TEX. CONST. art. XVI, § 50(a)(5) (emphasis added); *see also id.* art. XVI, § 37 (liens of mechanics, artisans, and material men on buildings for value of labor done thereon or material furnished therefor). A mechanics' lien attaches to property when the mechanic performs labor upon the building "under direct contract with the owner."

---

[2] *See* Tex. H.J. Res. 31, 75th Leg., R.S., 1997 Tex. Gen. Laws 6739; *see also* Votes on Proposed Amendments to the Texas Constitution, 1875-November, 1997, 1999 Tex. Gen. Laws 25 (Election Result Table).

*Warner Mem'l Univ. v. Ritenour*, 56 S.W.2d 236 (Tex. Civ. App.–Eastland 1933, writ ref'd) (discussing article XVI, section 37 of the Texas Constitution); *see also Inman v. Orndorff*, 596 S.W.2d 236, 238 (Tex. Civ. App.–Houston [1st Dist.] 1980, no writ) (a stranger to the title cannot create a valid lien on land) (discussing article XVI, section 37 of the Texas Constitution). An assessment lien against homestead property cannot be created against a homestead by a statutory process, but one may be created by contract signed by the homestead owner. *See Glenn v. Panhandle Constr. Co.*, 110 S.W.2d 1217, 1218 (Tex. Civ. App.–Amarillo, 1937 no writ); *White v Dozier Constr. Co.*, 70 S.W.2d 240, 241 (Tex. Civ. App.–Austin 1934, no writ); *see also Tex. Bitulithic Co*, 293 S.W. at 161-62 (contract between property owner and paving company created lien for paving and improving the street in front of property). Thus, a written contract between the property owner and the suppliers is essential for a lien for labor or materials used in constructing a new improvement on the homestead to attach to the homestead.

The governing body of the municipality, not the individual property owner, contracts for improvements in a public improvement district established under Local Government Code chapter 372. If a district is established, the powers granted by subchapter A of chapter 372 "may be exercised by a municipality." TEX. LOC. GOV'T CODE ANN. § 372.002 (Vernon 1999). The governing body of a municipality may "undertake an improvement project," and must pay the costs of improvements from the various municipal funds available for that purpose. *See id.* §§ 372.003(a), .021, .023, .026. Accordingly, a homestead cannot be subjected to forced sale for nonpayment of a public improvement district assessment under the "improvement thereon" clause of article XVI, section 50.

To be enforceable, a written contract for improvements on the homestead must also strictly comply with the statute listing the requirements for fixing a lien on a homestead. *See Moray Corp.*, 713 S.W.2d at 754; *see also Collier v. Valley Bldg. & Loan Ass'n*, 62 S.W.2d 82, 84 (Tex. 1933). An encumbrance may be fixed on homestead property for "work and material used in constructing improvements on the property if contracted for in writing as provided by [Property Code] Sections 53.254 (a), (b), and (c)." TEX. PROP. CODE ANN. § 41.001(b)(3) (Vernon 2000). Section 53.254 provides as follows:

> (a) To fix a lien on a homestead, the person who is to furnish material or perform labor and the owner must execute a written contract setting forth the terms of the agreement.
>
> (b) The contract must be executed before the material is furnished or the labor is performed.
>
> (c) If the owner is married, the contract must be signed by both spouses.

*Id.* § 53.254 (Vernon Supp. 2001).

A city's public adoption of the annual district assessment and service plan, combined with a landowner's written acknowledgment of the district when closing on the purchase of land, does not constitute a written contract as required by article XVI, section 50 of the Texas Constitution or by Property Code section 53.254. Accordingly, the facts you present do not fix a lien for the value of a special assessment on the homestead property benefitted by the assessment.

## S U M M A R Y

Local Government Code chapter 372 authorizes a city to levy special assessments on real property to aid in funding improvements in public improvement districts. The municipal governing body is authorized by statute to collect these assessments according to the procedures for collecting an ad valorem tax on real property, except for procedures applicable to the forced sale of homestead property to collect ad valorem taxes.

Assessments are not "taxes" as that term is used in the Texas Constitution, and a homestead may not be subjected to forced sale for nonpayment of a public improvement district assessment under the "taxes due thereon" clause of article XVI, section 50 of the Texas Constitution.

A homestead may not be subjected to forced sale for nonpayment of a public improvement district assessment under the "improvement thereon" clause of article XVI, section 50, absent a written, signed contract between the owner of the homestead property and the supplier of materials and labor for an improvement on the homestead property.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

SUSAN D. GUSKY
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General - Opinion Committee